UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| THERESA A. SKAGGS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 4:08-cv-0192-DFH-WGH |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of the Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

ENTRY ON JUDICIAL REVIEW

Claimant Theresa Skaggs seeks judicial review of a final decision by the Commissioner of the Social Security Administration denying her application for disability insurance benefits under the Social Security Act. Acting on behalf of the Commissioner, Administrative Law Judge ("ALJ") Samuel A. Rodner determined that Ms. Skaggs could no longer do her past relevant work but that she was not disabled under the Act because she had the residual functional capacity to perform a very limited range of sedentary work.

The case must be remanded because the ALJ cut off Ms. Skaggs' lawyer's questioning of the vocational expert about the basis for her key opinion. See *McKinnie v. Barnhart*, 368 F.3d 907, 911 (7th Cir. 2004).

Ms. Skaggs was born in 1965 and at the time of her administrative hearing was 43 years old. Ms. Skaggs never received a high school diploma. She had prior relevant work as a meat wrapper, baker, and cook. Ms. Skaggs alleges that she became disabled around April 30, 2001 due to pain and numbness in her back, arms, and legs. On June 28, 2005, Ms. Skaggs filed an application for disability insurance benefits. Her claim was denied on September 12, 2005 and upon reconsideration on January 27, 2006. On May 20, 2008, a hearing was held before an ALJ, who denied her claim on June 2, 2008. The Appeals Council denied further review of the ALJ's decision on September 8, 2008. Ms. Skaggs seeks review under 42 U.S.C. § 405(g), arguing that the denial was not based on substantial evidence.

The outcome of this case does not depend on the details of Ms. Skaggs' extensive medical record. Applying the five-step analysis under 20 C.F.R. § 404.1520, the ALJ found that Ms. Skaggs suffered from the following severe impairments: degenerative processes in both the lumbar and cervical spine causing pain in her lower back, back, legs, and right arm, as well as myofascial pain and depression. The ALJ found at step three that Ms. Skaggs' impairments did not meet or equal a listing that would call for an automatic finding of disability. The ALJ found that she had the capacity to do sedentary work as defined in 20 C.F.R. § 404.1567(a), with the following additional limitations: she could lift or carry more than 20 pounds occasionally or 10 pounds frequently; she could only occasionally engage in postural activities such as climbing ramps and

stairs, balancing, stooping, kneeling, crouching and crawling; she could never climb ladders, ropes, or scaffolds; she could reach overhead only occasionally with her right arm; and she would be limited to simple, routine, repetitive tasks with no rapid pace. With that residual capacity, the ALJ found at step four that Ms. Skaggs could no longer do her prior relevant work. Those conclusions at the first four steps meant that Ms. Skaggs qualified for disability insurance benefits unless the Commissioner could show at the fifth step that she could perform other work given her residual functional capacity, age, education, and experience. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

To meet this burden, the ALJ relied on vocational expert Micha Daoud, who testified that someone with Ms. Skaggs' residual functional capacity as found by the ALJ could work as a sedentary clerical worker, surveillance system monitor, and sedentary assembler/inspector.

Ms. Skaggs' counsel cross-examined Daoud about her opinions in response to the ALJ's hypothetical questions. Ms. Skaggs' counsel (Mr. Jenner) then asked Daoud the source of the data she used for her opinions. The following passage shows that remand is required here, for the ALJ cut off the attorney's attempt to get access to the key data that was used to deny benefits in this case:

> Q   Where are you getting those, those numbers of jobs?
> A   Are you asking what's the source of the data?

Q   Yes.

A   Taken from the U.S. Department of Labor and the U.S. Bureau of the Census.

Q   Well, you may be taking it from that, but who publishes that data that you're using?

A   It comes from, I'll have to look up the name of it exactly to tell you correctly.  U.S. Publishing.

Q   All right, and that's a private corporation, is it not?

A   Yes.

Q   You don't know how they arrived at that data, do you?

A   I believe they take Census surveys from different employers.  That's what they have told me they do.

Q   Okay.  That would be hearsay, but, I mean, you don't actually know exactly how they, the information is taken, how these jobs are determined.

A   I know that they collect the information from employers, is what they have told me.

Q   Okay.

A   That's my understanding.

Q   And then they apparently –

ALJ   Moving on, Mr. Jenner.

Q   – estimate the jobs based on that, is that correct?

VE   I'm sorry, I didn't hear your question.

Atty   And then they make their estimates of jobs based on that data, is that correct?

A   Yes, I, I expect that they do.

Q   Where can I find this private publication?

-4-

A    You can contact them and request to purchase it.

Q    I have to buy it?

A    Yes.

Q    Can I have your copy, what you're using?

ALJ  Let's move on, Mr. Jenner.  Come on.  Come on.  Next question, or I'm going to close the hearing.

Atty Your honor, I'd request that or I can't cross-examine the witness very well.  I don't have a –

ALJ  But jeez, she doesn't have no, she has no obligation to loan you her, her Census book.  Come on.

Atty Well, sir, of course she does.

ALJ  That's silly.

Atty I have a right on cross-examination to see the data on which she relies.

ALJ  Well, I, I don't, I'm saying, I'm saying you don't.  Come on.

Atty Well, I'm requesting it.  You're denying it to me, Your Honor?

ALJ  No, I'm denying it.  I'm denying it.

Atty I can't effective[ly] cross-examine the witness.

VE   I have no problem with him copying it.

ALJ  Huh?

VE   I have no problem with him copying it.

Atty Don't worry about it.

ALJ  This is the usual –

Atty As I said, Your Honor, I can't, I can't conduct –

ALJ  You know very well, Mr. –

-5-

Atty    – cross-examination –

ALJ    Those –

Atty    – unless I have the data –

ALJ    – those aren't [INAUDIBLE] that are used.

Atty    – on which the witness relies.

ALJ    Those are, those things are, are commonly relied upon by experts.

Atty    You, you say that. I don't know that. I'd like to see the data.

ALJ    No. I'm, I'm finding that to be the case. I'm taking judicial notice.

Atty    I will just head over –

ALJ    You stipulated –

Atty    – [INAUDIBLE] provided to me –

ALJ    – you stipulated to her qualifications, you stipulated to her qualifications as a vocational expert at all times.

Atty    That doesn't seem to relate to all her information, Your Honor. That merely means that she has the education and experience to testify –

ALJ    Okay, Mr. Jenner. Move on.

Atty    I still have the right to cross-examine –

ALJ    Move on.

Atty    – Judge Rodner, I have a right to cross-examine –

ALJ    Your right to violent banter –

Atty    I have a right to have the information on which the expert witness relies.

ALJ    She has given that information to you.

Atty    I haven't seen it.

ALJ   That's it. All questions rely on it.

Atty   [INAUDIBLE] I haven't seen it.

ALJ   Well, you can look it up.

Atty   No, I can't. I have to buy it. I'd have to buy it, and I don't have it.

VE   I may well find it in the Bureau of Labor Statistics.

ALJ   Can he go to the library? Can he get it on the Internet?

Atty   No, I can't. It's a private publication, Your Honor.

VE   It's possible if you went to the U.S. Department Labor or the Bureau of Census web page, you could find the information.

ALJ   Go to the U.S. Department of Labor.

VE   I, I can't access the Internet to be able [INAUDIBLE] –

Atty   Your Honor, that's not correct. That, that, they may use those statistics, but this publication is published by a private company, and they apparently sell this, and I, I, you know, my client would have to pay for it. That's not fair. I should, it should be provided to me as part of my right of cross-examination of the vocational witness.

ALJ   All right. That's denied. I hear what you're saying.

Atty   Thank you.

ALJ   Next question.

Atty   I obviously have no further questions.

R. 378-82.

"A vocational expert is 'free to give a bottom line,' but the data and reasoning underlying that bottom line must be 'available on demand' if the

claimant challenges the foundation of the vocational expert's opinions.  'If the basis of the vocational expert's conclusions is questioned at the hearing . . . then the ALJ should make an inquiry . . . to find out whether the purported expert's conclusions are reliable.'"  *McKinnie v. Barnhart*, 368 F.3d 907, 911 (7th Cir. 2004), quoting *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002).  A vocational expert's "data and reasoning" are not "available on demand" when the claimant has to pay to receive it, *McKinnie*, 368 F.3d at 911, or when the ALJ has denied the claimant the ability to view the information.  *Denham v. Barnhart*, 2006 WL 4097284, at *3 (N.D. Ill. May 23, 2006).

In this case, the transcript shows that a busy and impatient ALJ cut off counsel's inquiries about these matters and prevented effective cross-examination on the critical issue in the case.  Under the vocational expert's testimony and the ALJ's findings, there would have been no more than an estimated 350 total jobs in the Louisville area that Ms. Skaggs might have been capable of performing.  See R. 20, 370-71, 376-77.  That number is small enough that its accuracy and reliability are pivotal.  Yet the ALJ blocked reasonable efforts at cross-examination to test the information.  Under the reasoning of *McKinnie* and *Donahue*, the case must be remanded to allow full exploration of the underlying data.

To avoid this result, the Commissioner tries to shift the blame to Ms. Skaggs' counsel.  As the ALJ and the attorney were arguing about the line of questioning, the vocational expert interrupted to say that claimant's attorney

could copy the information.  R. 380.  The transcript indicates that her attorney responded "Don't worry about it," and the ALJ and attorney continued their debate.  The Commissioner argues that *Britton v. Astrue*, 521 F.3d 799 (7th Cir. 2008), shows that the offer to allow copying neutralizes the whole problem here.

      The court disagrees.  In *Britton*, the vocational expert brought a substantial amount of materials with her to the hearing and offered to provide those she relied upon to the claimant's attorney.  The attorney wanted the whole publication copied, not just the parts on which the vocational expert relied.  The ALJ denied that request but offered to provide the relevant portions of the publication.  The claimant's attorney refused.  The ALJ also offered to allow the claimant to supplement the record after the hearing, but that offer was also rejected.  The Seventh Circuit found no error because the relevant data had been made available to the claimant's attorney.  521 F.3d at 804.

      The transcript here shows what a different approach the ALJ took in this case.  In *Britton*, the ALJ took the issue seriously and offered several options to deal with it, none of which the attorney accepted.  In this case, the ALJ was too impatient. He made no efforts to accommodate the reasonable demand for access to the data underlying the vocational expert's pivotal opinion.  He ignored the copying offer, repeatedly told the attorney he had no right to the data, repeatedly told the attorney to move on, and pushed to close the record for a quick decision. The ALJ even went so far as to say that he was taking judicial notice, apparently

of the validity of the underlying data and the methods used to estimate the jobs available in the area. R. 381.

This case is more similar to *Denham v. Barnhart*, 2006 WL 4097284, in which the ALJ denied the claimant's request to view the job analysis studies relied upon by the vocational expert because the studies contained confidential information about other individuals. The *Denham* court found that the ALJ's denial violated the rule set forth in *McKinnie* and remanded the case so that the claimant could have access to the needed data, perhaps with redactions for information about specific individuals. 2006 WL 4097284, at *3.

Here, despite repeated requests, the ALJ denied Ms. Skaggs' attorney the right to view Daoud's data. R. 379-382. There is no indication that the denial was based on confidentiality concerns, as it had been in *Denham*. Instead, the ALJ said he thought the information was beyond reasonable dispute and cut off the right to cross-examine the vocational expert. In the face of the ALJ's repeated roadblocks, the Commissioner's effort to blame Ms. Skaggs' attorney for the problem simply will not wash.

Second, the Commissioner relies on the vocational expert's suggestion that the data might have been available for free on the internet or directly from the Bureau of Labor Statistics. See R. 382. The vocational expert's comments on these points were speculative. She said "I may well find it" in the BLS and that

-10-

it was "possible" the information would be available on government web sites. The Commissioner has not shown that the information would actually have been available, and in any event, the ALJ did not follow up on those possibilities.

Once the vocational expert's information is questioned at the hearing, it is the ALJ, not the claimant, who has the duty to inquire about the reliability of the vocational expert's conclusions and information. *Donahue*, 279 F.3d at 446. That duty is not discharged by a quick references to information that might or might not be available to the attorney through some other channels. Moreover, even if the underlying data had been available publicly, the basis and methods for the key private estimates used by the vocational expert and the ALJ to deny benefits here would not have been available.

The denial of benefits here was based on the vocational expert's testimony, and the Commissioner has not shown that her testimony was reliable. "A finding based on unreliable [vocational expert] testimony is equivalent to a finding that is not supported by substantial evidence and must be vacated." *Britton v. Astrue*, 521 F.3d 799, 803 (7th Cir. 2008), citing *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Accordingly, this case is remanded to the Commissioner for further consideration consistent with this decision, including giving the claimant full access to the critical information and a full opportunity to cross-examine the

vocational expert about her conclusions. Final judgment will be entered accordingly.[1]

So ordered.

Date: August 6, 2009

DAVID F. HAMILTON, CHIEF JUDGE
United States District Court
Southern District of Indiana

---

[1] It appears that the Commissioner's position in this case has not been "substantially justified" within the meaning of the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A), so that if Ms. Skaggs meets the other statutory requirements, she would be entitled to an award of attorney fees incurred in this case if she files a timely request.

-13-

Copies to:

William Edward Jenner
JENNER AUXIER & PATTISON LLP
wjenner@wjennerlaw.net

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov